IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:23-cv-14021 |
| v. | ) ) | |
| | ) | Judge Edmond E. Chang |
| UNITED PARCEL SERVICE, INC. | ) ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF UPS'S
MOTION TO DISMISS EEOC'S COMPLAINT**

The Equal Employment Opportunity Commission ("EEOC") seeks to challenge a 2019 decision by Defendant United Parcel Service, Inc., an Ohio corporation ("UPS"), that required all candidates for driving positions regulated by the U.S. Department of Transportation ("DOT") to fully satisfy all DOT medical certification requirements, including the hearing test requirement. EEOC finds fault with the fact that UPS does not accept candidates for DOT driving positions who, unable to satisfy the conventional DOT hearing requirements, were granted an exemption to this hearing test requirement as part of an experimental DOT program. EEOC's Complaint challenges the denial of DOT-regulated driving jobs based on this policy and claims that it constituted disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, for every deaf and hard-of-hearing applicant (with the exemption) who was also a qualified individual with a disability.

The Complaint, however, fails to identify even one individual with a plausible ADA claim related to the policy decision. Specifically, the Complaint fails to allege anything factual related to even one individual with a hearing exemption who was allegedly qualified for a driving job at UPS and capable of performing the essential functions of the position, with or

without reasonable accommodation. This is a fatal defect for the ADA claims pled here, which each requires proof that the employee was a qualified individual with a disability at the time of the challenged decision. Stated another way, EEOC can only allege violations under the ADA on behalf of people who were qualified for the position in question and capable of performing the essential job functions of that position, with or without reasonable accommodation. Rather than allege any facts in support of this core requirement for an ADA discrimination claim, the Complaint merely concludes in categorical fashion that every person for whom EEOC wants to seek relief was qualified for the driving position in question and capable of performing the essential job functions of the driving position, with or without reasonable accommodation. (Compl., ¶ 24).[1]

Alleging a nationwide class of "aggrieved individuals" based solely on formulaic conclusions does not state a plausible claim for relief and falls well short of the minimum pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, nowhere in the Complaint is there a single fact pled regarding any individual the EEOC might contend is a qualified individual with a disability. For example, the Complaint pleads no facts in support of the notion that even one deaf or hard-of-hearing individual allegedly denied a driving position was (i) qualified for the position in that he/she satisfied any necessary licensing and certification requirements and the qualification requirements under the applicable union collective bargaining agreement, supplement or rider,[2] and (ii) capable of performing the

---

[1] Presumably, EEOC hopes to use discovery as a fishing expedition to investigate whether there are any individuals out there for whom it can allege a viable claim under the ADA, which is irreconcilable with EEOC's obligation to investigate such claims before filing an enforcement action.
[2] The UPS driving jobs at issue are all governed by a collective bargaining agreement, which addresses the qualifications for such positions and the process for filling vacancies, including the role of union seniority in the same. In many instances, this may be addressed more specifically

essential job functions of the position, with or without reasonable accommodation (*e.g.* driving the vehicle consistent with UPS's safety expectations, capable of lifting and delivering packages weighing up to 70 pounds and communicating effectively with UPS customers). The end result is a Complaint that intends to seek relief on a national basis for an amorphous group of "aggrieved individuals" based solely on formulaic conclusions. This falls well short of the minimum pleading requirements in *Twombly*, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Since 1970, the United States Department of Transportation ("DOT") Federal Motor Carrier Safety Administration ("FMCSA") has required individuals operating certain commercial vehicles to pass a hearing test to confirm that they can safely operate those vehicles. (*See* Compl. ¶ 16); What tests are used to determine if a driver has adequate hearing to drive safely? DOT FMCSA (April 1, 2014) https://www.fmcsa.dot.gov/faq/what-tests-are-used-determine-if-driver-has-adequate-hearing-drive-safely; 87 Fed. Reg. 14943 (Mar. 4, 2022).[3] In 2013, DOT FMCSA began granting exemptions to individuals who could not pass the test. 78 Fed. Reg. 7479 (Feb. 1, 2013).

---

in a regional supplement, a local rider or even a collective bargaining agreement with a local bargaining unit. EEOC's Complaint and its intended claim completely ignore the fact that no violation of the ADA can exist if the individual was not qualified for the position in question consistent with the requirements of the applicable collective bargaining agreement, supplement or rider.

[3] The court may take judicial notice of information appearing in the Federal Register, in government reports, and on government websites. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed."); *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729, 750 n. 3 (7th Cir. 2015) (taking judicial notice of provisions from the federal register); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites."); *Menominee Indian Tribe of Wis. V. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper.").

To qualify for an exemption, a person must submit an application for the FMCSA's consideration, notice of the application is published in the Federal Register with a thirty-day period for public comment, FMCSA considers the application and public comments, and then FMCSA issues a written decision to the applicant either approving or denying the application. *See* Federal Hearing Exemption Application, DOT FMCSA (May 4, 2021), https://www.fmcsa.dot.gov/medical/driver-medical-requirements/new-hearing-applicant-doc-email-version. Applicants are rarely (if ever) denied. (*See, e.g.,* Waivers, Exemptions, and Pilot Programs Report to Congress Fiscal Years 2018, 2019, and 2020: A report pursuant to Section 32913 of the Moving Ahead for progress in the 21st Century Act (49 U.S.C. §31315(e)), DOT FMCSA (February 2023), at 5 (reflecting that for fiscal years 2018-20, no application was denied).[4]

## COMPLAINT ALLEGATIONS

EEOC claims that UPS violated the ADA when it "refused to consider or hire" certain unidentified "aggrieved individuals" to drive DOT-regulated vehicles because they did not pass the DOT hearing test, but rather, received a hearing exemption from the DOT FMCSA. (Compl. ¶ 23). Specifically, the Complaint alleges that UPS's decision to not accept the hearing exemption for deaf and hard-of-hearing candidates for a DOT-regulated driving job with UPS violated the ADA because (purportedly) it (i) constituted discrimination on the basis of disability or because of a need to accommodate the individual (Count I); (ii) denied individual candidates

---

[4] While not at issue in this Rule 12 motion, UPS made a decision in 2019 after considered research and analysis that, at that time, the DOT's experimental hearing exemption program was inconsistent with UPS's commitment to the highest safety standards and insistence on its drivers being able to successfully complete the conventional DOT certification requirements that had been in place for almost fifty (50) years and were still in place for everyone not granted an exemption from the hearing requirements under an experimental program. The fact that FMCSA almost never denies a request for an exemption was one factor evaluated as part of this decision.

the reasonable accommodation that would have enabled him/her to perform the essential job functions of the position (Count II); and (iii) constituted a qualification standard which screened out a class of individuals with disabilities and was neither job related nor consistent with business necessity (Count III).

Rather than allege any facts in support of these conclusions, the Complaint relies exclusively on formulaic conclusions. For example, the Complaint categorically alleges that all members of this amorphous group of "aggrieved individuals" could have completed any necessary application, hiring and/or training process and performed the essential functions of the [unspecified] driver positions at issue with reasonable accommodations, including, but not necessarily limited to the use of sign language interpreters and allowing communication via writing, texts, and gestures." (Compl. ¶ 24). Similarly, all the Complaint alleges with regard to the individuals for whom EEOC seeks relief is that each such person has "an impairment, deafness or reduced hearing," obtained a DOT medical card with an exemption from the DOT hearing test and applied for (or were deterred from applying for) UPS DOT-regulated driving jobs from October 2019 through the present. (*Id*. ¶¶ 14-17, 22).

Nowhere in the Complaint are there any facts pled to suggest that even one member of this class of "aggrieved individuals" was a qualified individual with a disability at the time he/she was allegedly denied a UPS driving job. To put this into context, there is not one fact alleged to make it plausible that even one person for whom EEOC seeks relief in this lawsuit: (i) was qualified for a UPS driver position under the terms of the collective bargaining agreement, supplement or rider governing such position, (ii) had the requisite union seniority to bid on the position (and did bid on it), and (iii) could perform the essential functions of such job (*e.g.* driving the vehicle in a safe manner, communicating with the public, lifting packages that weigh

up to 70 pounds, etc.). As the ADA only prohibits discrimination against qualified individuals with a disability, this is a glaring omission from a complaint purporting to allege ADA violations on behalf of a class of "aggrieved individuals."

## ARGUMENT

### I. EEOC Has Failed to Allege a Plausible Claim for Relief.

EEOC can only pursue ADA discrimination claims on behalf of individuals who were a qualified individual with a disability under the ADA at the time of the challenged decision. Despite this, EEOC has failed to allege anything factual as to even one person in this class of "aggrieved individuals" who allegedly was qualified for the driving position in question and capable of performing its essential job functions. This falls well short of EEOC's burden to plead sufficient facts to state a plausible claim for relief. As such, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

#### A. Minimum Pleading Requirements.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court has held that this requires pleading "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

The Seventh Circuit has followed *Twombly* by holding that a complaint must plead sufficient facts and detail to: (i) give the defendant fair notice of what the claim is and the grounds upon which it rests; and (ii) to state a claim for relief that rises above the speculative level and is plausible on its face. *Equal Employment Opportunity Commission v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The amount and types of facts necessary to satisfy this requirement will vary from case to case, but "[a] complaint must always, however, allege enough facts to state a claim to relief that is plausible on its face, and how many facts are enough will depend on the type of case." *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

### B. The ADA Only Prohibits Discrimination Against Qualified Individuals with a Disability.

The ADA prohibits discrimination against qualified individuals with a disability on the basis of their disability. 42 U.S.C. § 12112(a). Discrimination includes, among other things, the failure to make reasonable accommodations for such disabilities. 42 U.S.C. § 12112(b)(5)(A). Unlike Title VII or other laws that prohibit discrimination against any *individual*, the ADA only prohibits discrimination against qualified individuals with a disability. *See Mack v. Chicago Transit Authority,* No. 17 C 6908, 2020 WL 3414952, at *3 (N.D. Ill. June 22, 2020); *E.E.O.C. v. Supervalu, Inc.*, 674 F. Supp. 2d 1007, 1011 (N.D. Ill. 2009). This distinction is significant in that an employer can willfully refuse to make reasonable accommodation for someone who is not a qualified individual with a disability without violating the ADA but must make such accommodation for someone who is a qualified individual with a disability. *See Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998) ("[T]he ADA's proscription against employment discrimination protects only the class of persons who are qualified individuals with a disability."); *Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997) (ADA claim requires

proof of membership in the protected class—proof that the employee is a qualified individual with a disability); *Hamm v. Exxon Mobil Corp.*, 223 Fed. Appx. 506, 508 (7th Cir. 2007) ("The employment provisions of the ADA only protect qualified individuals.")

As a result, the determination of whether the plaintiff is a qualified individual with a disability is a crucial first step in determining whether a violation of the ADA has occurred. To meet this requirement, it is a plaintiff's burden to prove that he/she can: (i) satisfy the requisite skill, experience, education and other job-related requirements of the employment position he/she holds or desires, and (ii) perform the essential functions of such position, with or without reasonable accommodation. *Basith v. Cook County,* 241 F.3d 919, 927 (7th Cir. 2001); 29 C.F.R. §1630.2(m). This two-part inquiry must be made as of the time of the employment decision. *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996)).

As the ADA does not prohibit discrimination or require reasonable accommodation unless the plaintiff was a qualified individual with a disability, a plaintiff must plead sufficient facts to allow the Court to reasonably infer the plaintiff was a qualified individual. "Because disability, unlike race, in some circumstances can be a legitimate consideration in employment decisions, a complaint alleging discrimination under the ADA must plead with adequate detail that the plaintiff is qualified to perform the essential functions of the job with or without reasonable accommodation." *E.E.O.C. v. UPS, Inc.*, No. 09-cv-5291, 2010 WL 3700704, at *5 (N.D. Ill. Sept. 10, 2010) (Dow, Jr., J.). Similarly, "just as in the retaliation context a complaint must provide some factual basis for the assertion that an employee's conduct is protected, a complaint asserting discrimination under the ADA must provide some allegation or allegations specifically indicating that the plaintiff is qualified to perform the essential functions of the job

with or without reasonable accommodation." *Id.*, at *4; *see also Hohider v. United Parcel Service, Inc.* 574 F.3d 169, 192, 195 (3rd Cir. 2009) (former Supreme Court Justice Sandra Day O'Connor, sitting by designation) (a finding that the employer discriminated against, or failed to make reasonable accommodation for, a class of individuals is a meaningless finding unless there is a related finding that each such individual was a qualified individual with a disability).

      C.      **EEOC Has Not Pled a Plausible Claim for Relief for Even One Individual.**

Contrary to this requirement, EEOC's Complaint fails to allege any facts in support of its conclusion that an amorphous group of "aggrieved individuals" were each a qualified individual with a disability under the ADA. Nowhere in the Complaint is there a single fact alleged about any deaf or hard-of-hearing individual who was qualified for the driving position in question, including satisfying DOT requirements, meeting the qualification requirements under the applicable collective bargaining agreement, or supplement or local rider, and possessing the necessary union seniority to bid on the position. Nor does the Complaint allege anything factual to make it plausible that even one such "aggrieved individual" was capable of performing the essential job functions of a UPS DOT-regulated driving position, such as a package car driver, either with or without a reasonable accommodation. As such, EEOC has failed to plead a plausible claim of relief under the ADA for even one individual in this purported nationwide enforcement action.

This is no minor oversight as the DOT driving positions at issue are all governed by collective bargaining agreements, regional supplements and local riders with the International Brotherhood of Teamsters and its local bargaining units, which govern the qualification requirements for these positions and the procedure for filling vacancies. Yet, nowhere in the

Complaint is there a single fact pled about any individual being qualified for a driving position consistent with CBA and union seniority requirements.

Similarly, UPS has an intensive training and qualification process which requires a classroom training program (Integrad) followed by a thirty (30) day (or longer) probationary period wherein the local package operation can disqualify the driver from the driving position for a variety of reasons, including a vehicle accident, failure to observe safe working and driving requirements, and an inability to perform the job consistent with UPS expectations. EEOC's Complaint glosses over the rigorous qualification process as well as the fact that the driving jobs at issue require a variety of physical tasks that go beyond driving and include, for example, the ability to lift and carry packages weighing up to 70 pounds, work in various weather and climate conditions and effectively communicate with UPS customers. For both of these reasons, many drivers who successfully bid on a driving position do not end up successfully qualifying for the job at the Integrad step or during the probationary period.

Yet, there is not one fact pled about even one such "aggrieved individual" to make it plausible that he/she could qualify for the position under the terms of the applicable CBA, had the necessary DOT certification and licensing to operate the vehicle, had the necessary union seniority to bid on the position (and did bid on the position), and could perform the essential job functions of the position, with or without reasonable accommodation. As such, EEOC has failed to plead a plausible claim for relief under the ADA for even one individual. This falls well short of the minimum pleading standard required by *Twombly*. *See Concentra*, 496 F.3d at 777 ("[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief by providing allegations that raise a right to relief above the speculative level.").

Indeed, EEOC has been faulted previously for doing precisely what it has done here: alleging a "class" claim potentially encompassing hundreds of unidentified individuals based solely on formulaic conclusions with no factual allegations to satisfy minimum pleading requirements. *See E.E.O.C. v. Supervalu, Inc.*, 674 F. Supp. 2d 1007, 1011 (N.D. Ill. 2009) (Bucklo, J.) (where alleged class claim failed to allege facts making it plausible that even one person was a qualified individual with a disability, the court dismissed the Complaint because,"[n]ot only does this allegation fail to assert that Schied was qualified to perform the essential functions of the job with or without reasonable accommodation, it is also precisely the type of conclusory, formulaic assertion that was disapproved by *Twombly*."); *E.E.O.C. v. UPS, Inc.*, 2010 WL 3700704, at *3, 6 (EEOC complaint dismissed where it lacked "some allegation or allegations specifically indicating that the plaintiff is qualified to perform the essential functions of the job with or without reasonable accommodations" and was "so threadbare, conclusory, and formulaic that it [did] not even allow the Court to reasonably infer that [the named individual] or proposed class members have a plausible basis for claiming to be 'otherwise qualified to perform the essential functions of the job with or without reasonable accommodation.'").[5]

### D. EEOC Should Not Be Permitted to Conduct a Fishing Expedition to Investigate Whether any Claims Exist.

EEOC seeks to use these formulaic conclusions as a springboard for investigating via discovery whether there are any UPS employees who are deaf or hard-of-hearing and qualified for a DOT driving position, with the necessary union seniority to bid on a driving position (and did bid on the position) and capable of performing the essential functions of the job, with or

---

[5] In this prior ADA litigation between the parties, EEOC was required to file an amended complaint after filing an initial complaint that was based almost entirely on formulaic conclusions.

without reasonable accommodation. The Complaint also seeks to go beyond the UPS universe and include any individual who ever considered working at UPS but was allegedly deterred by UPS's refusal to accept the DOT hearing exemption – regardless of whether he/she ever actually worked at UPS or applied to work at UPS.

EEOC should have done this ***before*** filing suit. If allowed to proceed in this manner, UPS will be forced to engage in written discovery, medical record subpoenas, depositions and summary judgment motions for hundreds of individuals, ***the vast majority of whom never worked at UPS*** and lack the necessary qualifications under the applicable CBA to bid for a DOT-regulated driving position. This fishing expedition would require the parties to conduct discovery on each individual's abilities, limitations and circumstances to determine if he/she was qualified for the driving position in question, met the necessary CBA qualification requirements to bid on the position, applied for the position, and could perform the essential job functions of the position, with or without reasonable accommodation. And then, after all the time and expense of this individual-specific discovery, UPS would have to move for summary judgment or demand a voluntary dismissal from EEOC for each such person who was clearly not a qualified individual with a disability for purposes of the ADA claim in this action.

This is precisely the sort of speculative, large-scale fishing expedition that *Twombly* is intended to prevent. *See Twombly*, 550 U.S. at 558 ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."); *Asahi Glass Co. v. Pentech Pharm., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Justice Posner sitting by designation held, given the particularly costly and protracted discovery associated with case, "some threshold of plausibility must be crossed"

before allowing the claim to go forward). Indeed, the Seventh Circuit has made clear that where, as here, a complaint potentially calls for expansive discovery, more detail is required:

> The Court in *Bell Atlantic* wished to avoid the "interrorem" effect of allowing a plaintiff with a 'largely groundless claim' to force defendants into either costly discovery or an increased settlement value. Therefore, we have explained, "[i]f discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim."

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (internal citations omitted).

With no such factual detail pled here, EEOC's Complaint should be dismissed because it fails to allege a plausible claim for relief under the ADA for even one individual, let alone a class of unidentified "aggrieved individuals."

## CONCLUSION

For the reasons set forth herein, the EEOC's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

UNITED PARCEL SERVICE, INC.

By: /s/ *Gary R. Clark*
One of Its Attorneys

Gary R. Clark, ARDC #06271092
Kristin C. Foster, ARDC # 6316814
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
(312) 715-5000
(312) 715-5155 (fax)
gary.clark@quarles.com
kristin.foster@quarles.com

QB\86387289.1

- 13 -

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the foregoing **Memorandum in Support of UPS's Motion to Dismiss the EEOC's Complaint** was filed electronically on December 22, 2023 using the Court's CM/ECF system. Notice of this filing will be sent to parties of record.

*Counsel for Plaintiff*
Laurie Elkin
U.S. Equal Employment
 Opportunity Commission
Chicago District Office
230 S. Dearborn Street, Ste. 2920
Chicago, IL  60304
Lauri.elkin@eeoc.gov

*Counsel for Plaintiff-Intervenor*
Paul W. Mollica
Jin-Ho Chung
Equip for Equality
20 N. Michigan Avenue, Suite 400
Chicago, IL 60602
paulm@equipforequality.org
JinHo@equipforequality.org

    */s/Gary R. Clark*
    Gary R. Clark

QB\86387289.1