**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>) | |
| ) | No. 23 CV 14021 |
| Plaintiff, ) | |
| v. ) | Judge Sunil Harjani |
| ) | |
| UNITED PARCEL SERVICE, INC. ) | |
| ) | |
| Defendant. ) | |
| ===================== ) | |
| ) | |
| KURT BERNABEI, ) | |
| ) | |
| Plaintiff-Intervenor. ) | |

**EEOC'S MOTION FOR A PROTECTIVE ORDER AND TO MODIFY SUBPOENAS
DIRECTED TO FORMER EMPLOYERS**

Pursuant to Rule 26(c) and Rule 45(d)(3) of the Federal Rules of Civil Procedure, Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") respectfully requests that this Court modify the third-party subpoenas intended to be served by Defendant UPS on twenty-one former employers of aggrieved individuals and enter a Protective Order pursuant to Fed. R. Civ. P 26(c) that prevents UPS from issuing subpoenas to these employers in the absence of a showing of compelling need and approval from this Court.

The subpoenas are overly broad and, largely, request information that is either not relevant to any claim or defense or has, at best, attenuated relevance that renders this discovery not proportional to the needs of the case. At the same time, the breadth of the subpoenas, and the fact they are directed at the aggrieved individuals' other employers, is likely to cause annoyance, embarrassment, oppression, and interfere with the privacy interests of the aggrieved individuals

in this case. Thus the burden of the proposed discovery outweighs any likely benefit, and thus exceeds the limits of Rule 26(b)(1). UPS has not shown any specific need for such information or that the same information cannot be obtained via other discovery.

## BACKGROUND

EEOC and Plaintiff-Intervenor Bernabei filed this lawsuit against UPS alleging that the company violated the ADA by not hiring Deaf and hard of hearing applicants as drivers of vehicles regulated by the Department of Transportation ("DOT") because of their disability. EEOC has identified approximately 30 individuals, in addition to Mr. Bernabei, who it alleges have been harmed by this practice. The discovery of this case is taking place in phases, and the parties are currently conducting Phase 1 discovery, which includes ten aggrieved individuals and Mr. Bernabei. UPS has given EEOC notice, pursuant to paragraph 17 of the Agreed Confidentiality Order in this case, ECF No. 50, that it intends to issue multiple subpoenas to the current and former employers of each member of this group to obtain certain employment records. The instant motion is directed specifically at the group of 21[1] subpoenas which are directed at former employers where these aggrieved individuals drove commercial vehicles.

Each of these subpoenas seeks the same information:

> *All documents maintained in the personnel file related to employment and job performance, including any job application materials, disciplinary materials, termination or suspension materials* or any records related to hours worked, wages paid, and benefits offered, any reports on driving records, accidents, moving violations, assessment of [aggrieved individual's] driving, etc.

*See, e.g.,* Subpoena, attached as Exhibit A (emphasis added).

---

[1] UPS originally included 23 subpoenas in this group, but after EEOC informed UPS that 2 of these subpoenas were addressed to current employers, UPS agreed that those 2 would not be issued with this group. The remaining 21 subpoenas are all addressed to former employers.

In the Rule 37 discussions relating to these subpoenas, EEOC explained that it did not object to the portions of these subpoenas seeking records relating to hours, wages, and benefits, or to records relating to driving accidents, moving violations, or driving assessments. But EEOC objected to UPS's broad requests for "all documents maintained in the personnel file related to employment and job performance, including any job application materials, disciplinary materials, termination or suspension materials." The parties are at an impasse regarding the scope of these subpoenas.

## ARGUMENT

Rule 26(c) authorizes a party to move for a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R.Civ.P. 26(c)(1). Rule 45(d)(3) additionally requires that, on timely motion, a court "must quash or modify a subpoena that ... subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3). Moreover, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules ... if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative or *can be obtained from some other source* that is more convenient, less burdensome, or less expensive...." Fed.R.Civ.P. 26(b)(2)(C) (emphasis added).

The rules also limit the scope of discovery to matters that are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, ... the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). The Supreme Court has recognized that the prospect of employer-defendants "as a routine matter undertak[ing] extensive discovery into an employee's background or performance on the job [at other employers]" is a "not an insubstantial" concern,

but one that the Court assumed district courts would prevent through application "appropriate provisions of the Federal Rules of Civil Procedure." *See McKennon v. Nashville Banner Co.,* 513 U.S. 352, 363 (1995) (discussing risks of the "after-acquired evidence" defense).

Just such circumstances are present here. UPS has made no particularized showing that this information is relevant. Nor has UPS attempted to obtain all of this information via less intrusive means of discovery such as depositions.

### A. Plaintiff EEOC has Standing to Challenge the Third-Party Subpoena

A party has standing to challenge a third-party subpoena if the party can assert that "the subpoena infringes upon the movant's legitimate interests." *U.S. v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982). A legitimate interest includes a party's privacy interests. *See Westmore Equities, LLC v. Village of Coulterville,* No. 3:15-CV-241-MJR-DGW, 2016 WL 8539974, at *2 (S.D. Ill. Jan. 25, 2016). Plaintiffs generally have a privacy interest in their own employment records, and EEOC has standing to enforce that privacy interest on behalf of claimants involved in its lawsuits. *See E.E.O.C. v. Rexnord Industries*, LLC, No. 11-CV-777, 2012 WL 2525652, at *5 (E.D. Wis. June 29, 2012). UPS's subpoenas infringe upon the privacy interests of the aggrieved individuals in this case, and thus EEOC has standing to move to modify them.

### B. UPS's Subpoenas should be Modified.

UPS – without any showing of particularized need – seeks records from twenty-one employers who employed seven aggrieved individuals before they applied to or were deterred from applying to UPS. Courts have repeatedly held that employment records from other employers are not discoverable and have frowned on the issuance of subpoenas to employment discrimination plaintiffs' prior or subsequent employers, deeming them to be harassing and an abuse of the discovery process. As the court in *Perry v. Best Lock Corp.*, No. IP 98-C-0926-

H/G, 1999 WL 33494858, *2 (S.D. Ind. Jan. 21, 1999), noted, "[i]f filing what is, by all appearances to the court, a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous, current, and prospective employers, there is a serious risk that such discovery can become 'an instrument for delay or oppression.'" The same reasoning would apply in an enforcement action brought by the government.

In *Perry*, the defendant issued subpoenas on the plaintiff's past, prospective and current employers for the purposes of developing an after-acquired evidence defense, investigating any performance or discipline problems of the plaintiff, and discovering if the plaintiff had filed frivolous discrimination claims against other employers. *Id.* at *2-3. The court noted that it was conceivable that the subpoenas might lead to admissible evidence but granted the plaintiff's motion to quash because "there is no specific reason before the court suggesting that the discovery [the discriminating employer] seeks from plaintiff's past, current, and prospective employers would have any material importance for resolving the issues presented in this case." *Id.* at *3.

Such is also the case here. UPS claims that the records it seeks go directly to the individual's ability to perform the essential job functions of the position because EEOC has asserted that prior employment driving a commercial vehicle is evidence that the aggrieved individual was a qualified individual with a disability at the time of their application to UPS. But EEOC is not objecting to the portions of these subpoenas seeking employment records relating to *driving*, but rather to the broad requests for "all documents maintained in the personnel file related to employment and job performance, including any job application materials, disciplinary materials, termination or suspension." Even if it is somehow conceivable that the subpoenaed information here might lead to admissible evidence, UPS has made no showing that the

information sought via these subpoenas would have any material importance for resolving the key issue presented by this case: the reason that UPS failed to hire any of the aggrieved individuals. UPS has not indicated that in making hiring or selection decisions it has ever called applicants' prior employers or taken other steps to obtain their personnel files or performance records.

As EEOC has already agreed that UPS can subpoena records from prior employers relating to driving, it apparent that UPS is simply fishing for general negative information about these aggrieved individuals. Courts have not found this to be a justification for a subpoena. *See Collins v. Midwest Medical Records Assoc., Inc.*, No. 07-CV-437, 2008 WL 789471, at * 1-2 (E.D. Wis. Feb. 7, 2008) (granting motion to quash subpoenas to the plaintiff's current and former employers because the defendant did not establish that the documents were sufficiently relevant to outweigh the harm to the plaintiff and were only subpoenaed to see "what might be out there"); *Woods v. Fresenius Med. Care Group of North Am.*, No. 1:06-cv-1804-RLY-WTL, 2008 WL 151836, at *2 (S.D. Ind. Jan. 16, 2008) ("Because the Defendant has failed to demonstrate that its subpoenas to the Plaintiff's past and current employers are based upon anything other than the Defendant's hope that the documents sought might prove useful in this case, the Plaintiff's motion to quash the subpoenas is granted").

In addition, the potential for harm is substantial. By issuing the proposed subpoenas in their current form, which includes more than routine-sounding requests relating to pay and driving experience, Defendant would alert these employers that these aggrieved individuals are involved in litigation brought against another former employer or potential employer who is questioning every aspect of their prior jobs. Asking about discipline records specifically, for example, raises an inference that this is a particular concern of UPS about this individual even in instances where aggrieved individuals do not have any disciplinary records with their previous

employers. This harm is more than just hypothetical. At least one of the aggrieved individuals in Phase 1 has been invited by one of these former employers to reapply to that job. And he is not alone. Aggrieved individuals in the EEOC's cases routinely express concern their employment prospects will be harmed if other employers are asked to provide this kind of information.[2]

In short, "an employment discrimination plaintiff does not open her entire work history up for discovery by the defendant as a matter of course." *Woods,* 2008 WL 151836, at \*1. "[R]ather, the defendant must demonstrate a *specific reason* why the information is relevant to the particular claims and defenses in the case at hand." *Id.* (emphasis added). The primary issue in this suit is whether UPS failed to hire these individuals because they are Deaf or hard of hearing. The broad requests in these subpoenas "have nothing to do with that. And any peripheral relevance the requested documents might conceivably have is decisively outweighed by the potential for harassment or reputational injury presented by a subpoena to such a former employer." *See Vuona v. Merrill Lynch & Co.,* 2011 WL 5553709, at \*9 (S.D.N.Y. Nov. 15, 2011).

## **CONCLUSION**

The portions of these subpoenas seeking entire personnel files including all records of discipline and performance are irrelevant. What little relevant information they

---

[2] The chilling effect of a defendant's seeking highly private and personal information for a victim of discrimination simply as a matter of course additionally burdens the EEOC's law enforcement responsibilities. The EEOC's principal purpose in bringing this suit is to enforce the ADA and to deter future violations by this and other employers. *See General Telephone Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 326 (1980); *In re Bemis*, 279 F.3d 419, 422 (7th Cir. 2002) ("EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately"). The EEOC cannot, as a practical matter, do that effectively without the cooperation of aggrieved individuals. If being involved in a suit such as this involves, as a matter of course, opening up most aspects of one's life to searching examination by defendant's lawyers, rational people will more frequently decline to participate, undermining the government's goals of specific and general deterrence.

encompass, if any, can be obtained in less intrusive, harassing, and burdensome ways such as by deposing these aggrieved individuals (which UPS plans to do). Any marginal benefit of these requests is far outweighed by their privacy and reputational costs to these aggrieved individuals. The subpoenas should be amended by limiting them to "All documents maintained in the personnel file related to . . . hours worked, wages paid, and benefits offered; and any reports on driving records, accidents, moving violations, and assessment of driving."

Date: March 27, 2025

*s/Jeanne Szromba*
Jeanne B. Szromba
Trial Attorney
Chicago District Office
230 S. Dearborn St.
Suite 2920
Chicago, Illinois 60604

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on March 27, 2025, the foregoing **EEOC'S MOTION FOR A PROTECTIVE ORDER AND TO MODIFY SUBPOENAS DIRECTED TO FORMER EMPLOYERS** was electronically served upon counsel of record.
.

                                                                                                *s/Jeanne B. Szromba*
                                                                                                 Jeanne B. Szromba
                                                                                                 Trial Attorney
                                                                                                 Chicago District Office
                                                                                                 230 S. Dearborn St.
                                                                                                 Suite 2920
                                                                                                 Chicago, Illinois 60604