IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:23-cv-14021 |
| v. | ) ) | Honorable Sunil R. Harjani |
| UNITED PARCEL SERVICE, INC. | ) ) | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | ) ) | |

**UPS'S RESPONSE IN OPPOSITION TO EEOC'S MOTION FOR A PROTECTIVE ORDER AND TO MODIFY SUBPOENAS DIRECTED TO FORMER EMPLOYERS**

Plaintiff Equal Employment Opportunity Commission's ("EEOC") motion seeks to modify or quash subpoenas directed at the former (not current) employers for the ten (10) Phase 1 Claimants where the employment involved driving a commercial vehicle. As EEOC has pointed to this very same experience driving commercial vehicles as its evidence that the claimant could perform the essential job functions for UPS positions sought, EEOC has directly injected each claimant's job performance in these positions into contention in this lawsuit. Indeed, it is beyond self-serving for EEOC to attempt to modify the subpoenas to only request the information it needs (establishing that each claimant drove commercial vehicles for the employer) but attempt to block any discovery into how the claimant's job performance was driving said commercial vehicle. Nor has EEOC identified any specific or tangible prejudice that even one claimant will suffer by allowing the subpoenas to go to these former employers and seek information regarding job performance in addition to the agreed upon topics of wages and benefits and driving records. As such, EEOC has not met its burden under either Fed. R. Civ. P. 26(c) or 45(d)(3) to quash or modify the subpoenas.

## BACKGROUND

On or about February 21, 2025, Defendant United Parcel Service, Inc. an Ohio corporation ("UPS") informed EEOC of its intent to issue subpoenas to the current and former employers of the ten (10) claimants identified as part of Phase 1 of discovery ("Phase I Claimants" or "Claimants"). UPS provided EEOC a list of the proposed subpoena recipients and information sought. EEOC objected to the scope of the anticipated subpoenas on March 3, 2025, thus kicking off the Parties' attempts to resolve the disputed subpoenas without court intervention. UPS made multiple concessions related to a subset of the anticipated subpoenas, including, agreeing to give EEOC fourteen (14) days for the Phase I Claimants to gather the requested personnel records from *current employers* and waiting until after claimant depositions before determining if a subpoena to a current employer is still necessary.[1] UPS also agreed to limit the information sought by its subpoenas to prior employers *of non-commercial driving jobs* to only records related to wages and benefits. EEOC, however, has taken the position that it objects to any subpoena request (in any case) for job performance information, which necessarily requires the current motion practice. After numerous emails and a live discussion on March 17, 2025, the parties agreed they were at an impasse on the issue of seeking records related to job performance for non-current employers. As such, EEOC filed its motion to quash on March 27, 2025.

## DISPUTE

At issue in EEOC's motion are UPS's subpoenas to the **former employers** of Phase I Claimants where the **Claimant performed commercial driving work.** The subpoenas seek:

> All documents maintained in the personnel file related to employment and job performance, including any job application materials, disciplinary materials,

---

[1] Based on the impasse in the current case, UPS unfortunately expects that the issue of subpoenas to current employers is likely to result in some motion practice at the conclusion of claimant depositions in May.

termination or suspension materials, or any records related to hours worked, wages paid and benefits offered, any reports on driving records, accidents, moving violations, and assessment of [Phase I Claimant's] driving.[2]

EEOC's final position on the matter was to limit any subpoena to, "all documents relating to wages/hours/benefits, documents relating to driving, including any reports on driving records, accidents, moving violations, and assessments or performance reviews related to the individual's driving and documents relating to terminations for cause." (Ex. A, March 13, 2025 email). This position necessarily excludes all records related to job performance in a commercial driving job, unless it is contained in a formal performance assessment and relates to driving (if the Company even gives performance reviews) or resulted in a termination for cause. Stated another way, recipients of the subpoena are called upon to discern which file materials relate to driving and which relate to job performance in a commercial driving job and to exclude all write-ups or disciplinary materials for the claimant and all performance documents that do not somehow fall within the narrow exception of a driving-based performance assessment or a termination for cause.

## ANALYSIS

EEOC's objection is premised upon its assertion that the records sought are: (1) irrelevant; (2) prejudicial; and (3) available via alternate means. ***EEOC's argument on relevance is hypocritical at best because EEOC has made clear in its interrogatory responses that it intends to rely upon this very same employment in commercial driving jobs to meet its burden to prove that each claimant could perform the essential job functions for the UPS position sought***. (Ex. B, EEOC's Fourth Supplemental Interrogatory Responses, Nos. 7, 11 and

---

[2] EEOC misquotes the subpoena in its motion by adding "etc." at the end of the request.

16).[3] Nor has EEOC identified a single claimant who would be prejudiced by a single subpoena in any tangible way. Instead, EEOC relies on its general policy arguments that subpoenas to other employers are harassment and should never be allowed and, if allowed, should be limited to the information EEOC deems relevant. EEOC, however, never connects the dots on how a subpoena seeking information regarding wages, benefits, and driving records (what EEOC agrees to) suddenly becomes "harassment" if it also seeks records related to job performance. Nor can it.

### A. EEOC Cannot Meet its Burden to Modify or Quash the Subpoenas.

The scope of discovery available through a Fed. R. Civ. P. 45 subpoena is broad and, like Rule 26, permits discovery of materials that are relevant to any party's claim or defense and likely to lead to relevant information. *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 559 (7th Cir. 1984) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"); *E.E.O.C. v. Rexnord Industries*, 2012 WL 2525652, at *5 (E.D. Wis. June 29, 2012) ("The scope of discovery obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules."); *Roman v. City of Chicago*, 2023 WL 121765, at *7 (N.D. Ill. Jan. 6, 2023) ("The scope of discovery available by way of a Rule 45 subpoena generally is measured by the same broad relevancy standard applicable to party discovery under Rule 26(b)(1).") (internal citation omitted).

The party moving for a protective order has the burden of proving "the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less

---

[3] UPS has omitted from the exhibit answers for other interrogatories not at issue in this motion to protect against disclosure of information which the claimants may not want included in a court filing. Interrogatory No. 7 asks EEOC for its factual basis for claiming each Phase 1 Claimant was a qualified individual with a disability. EEOC's responses points to specific examples of the claimants driving for other employers and incorporates by reference EEOC's answers to Interrogatories Nos. 11 and 16, which provide detailed answers regarding each claimant's experience driving DOT-regulated vehicles.

expensive, or the burden or expense of the proposed discovery outweighs its likely benefits." *E.E.O.C. v. Rexnord Indus.*, 2012 WL 2525652, at *6 (E.D. Wis. June 29, 2012); *Malibu Media, LLC v. John Does 1-6,* 291 F.R.D. 191, 206 (N.D. Ill. 2013) ("The moving party bears the burden of showing that good cause exists for a protective order); s*ee also Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, 2014 WL 7183631, at *2 (N.D. Ind. Dec. 16, 2014) ("When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."). EEOC has not and cannot meet this burden with regard to the categories of information requested in UPS's subpoenas.

   **B.**  **Information Related to Job Performance in a Commercial Driving Job is Relevant and Directly Relates to EEOC's Arguments.**

EEOC feigns that UPS simply wants information on job performance in commercial driving jobs as a "fishing expedition" to see whether it can find any after-acquired evidence. *See* (Dkt. # 261, Pl.'s Motion, p. 6). This contention intentionally ignores the fact that EEOC has affirmatively stated that it intends to rely upon each claimant's successful performance of such commercial driving jobs as proof that the claimant could perform the essential job functions of the UPS position sought. Stated another way, ***EEOC intends to use the subpoena scope as both a sword and a shield – agreeing to request information sufficient to show employment driving a commercial vehicle to prove EEOC's case but opposing any records related to how the claimant performed in the job.*** As such, any contention by EEOC that the information sought is outside the scope of permissible discovery under Fed. R. Civ. P. 45 is self-serving and without merit.

In its Complaint, EEOC claims that each of the 32 claimants identified in this case as an "Aggrieved Individual" was a qualified individual with a disability under the Americans with Disabilities Act, 42 U.S.C. §12111 *et seq.* ("ADA"), and that UPS discriminated against each claimant by failing to reasonably accommodate each claimant and because the 2019 hearing exemption policy at issue in this case was (EEOC claims) a qualification standard that violated the ADA. (Complaint, Dkt. #1, Counts I and II). EEOC's burden on both claims is to prove that each claimant was a qualified individual with a disability under the ADA. *See Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016) (To prove a violation under the ADA, "a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability."). To meet this requirement, it is a plaintiff's burden to prove that he/she can: (i) satisfy the requisite skill, experience, education and other job-related requirements of the employment position he/she holds or desires, and (ii) perform the essential functions of such position, with or without reasonable accommodation. *Basith v. Cook County,* 241 F.3d 919, 927 (7th Cir. 2001); 29 C.F.R. §1630.2(m).

EEOC's position throughout this case, and in its written discovery responses, has been that each claimant's employment in a commercial driving position for another employer is evidence that the claimant could perform the essential job functions of the UPS position sought. *See* e.g. (Ex. B, EEOC's Fourth Suppl. Objs. and Answers to UPS's First Set of Interrogs., Nos. 7, 11 and 16). Indeed, EEOC's response to Interrogatory No. 7 explicitly cites to multiple claimants' experience driving commercial vehicles for other employers as evidence that these

individuals were qualified individuals with disabilities.[4] EEOC's response to Interrogatory No. 7 also incorporates by reference its responses to Interrogatories Nos. 11 and 16 (which identify the claimants' experience driving DOT-regulated vehicles for other employers) as evidence EEOC claims proves that each claimant was a qualified individual with a disability. *Id.* These are the same employers for which EEOC now asks the Court to block any subpoenas related to job performance in these positions driving a commercial vehicle. As such, the information sought related to job performance is clearly relevant to the issues in the case and within the permissible scope of Fed. R. Civ. P. 26 and 45.

        **C.**        **EEOC Has Failed to Identify Any Prejudice Resulting from the Subpoenas.**

As became clear during the numerous attempts to resolve the subpoena dispute, EEOC's objection to subpoenas related to job performance is an objection to such subpoenas in general because (it claims) they harass claimants and are a fishing expedition to find after-acquired evidence. Relying on its generic policy arguments, EEOC fails to identify any specific or tangible way that even one claimant in this case would be prejudiced by permitting a subpoena to a prior employer that seeks information regarding job performance, in addition to the agreed upon request for wage and benefit information and driving records. EEOC did not because it cannot. As such, EEOC has failed to meet its burden to prove the level of prejudice necessary to invoke the Court's ability to block or modify the subpoenas.

        1.        **EEOC Has Failed in its Burden to Prove Prejudice for Even One Claimant.**

Nowhere in EEOC's motion is there any reference to a specific and realistic threat of harm or prejudice to even one claimant. EEOC makes a vague reference to an anonymous claimant who might want to return to an anonymous employer sometime in the future but never

---

[4] For example, EEOC states that Claimant Wayne Turner "has held several positions driving tractor trailers"; Claimant Michael Paasch "has been driving a variety of DOT regulated vehicles for 20 years"; and Claimant Willine Smith "has over fifteen years of experience as a bus/motor coach driver." (Ex. B, No. 7).

explains why that anonymous individual would suffer prejudice with that anonymous employer by allowing the subpoena to also seek job performance information (in addition to the items that EEOC agrees with). (Dkt., #261, p. 7). This vague speculation is clearly insufficient to support a motion to quash or modify the subpoenas for that anonymous individual. *See Bell v. Ardagh Grp. S.A.*, 2020 WL 8996809, at *3 (S.D. Ind. Mar. 23, 2020) (denying Plaintiff's motion to quash where the need for the relevant information outweighs the Plaintiff's "hypothetical and speculative risk," particularly where the subpoenaed party is already aware of the lawsuit."); *Parker v. Delmar Gardens of Lenexa, Inc.*, 2017 WL 1650757, at *6 (D. Kan. May 2, 2017) ("[C]onclusory claims of annoyance, harassment, and embarrassment are not sufficient to satisfy an objecting party's burden when seeking a protective order under Rule 26(c)[.]"

Instead of identifying a tangible harm or prejudice, EEOC's motion relies upon generic policy arguments and cases involving clear fishing expeditions which have no relationship to the current dispute. For example, EEOC's reliance on *Perry v. Best Loc Corp.*, is ill-suited for the current dispute because that case involved sweeping subpoena requests[5] to a current employer, former employers, and employers where plaintiff had applied, all in the mere hope of finding potential after-acquired evidence, without any basis for believing such evidence existed. 1999 WL 33494858, at *1-2 (S.D. Ind. Jan. 21, 1999).[6] The crux of the court's decision to quash defendant's subpoenas in *Perry* was based on the defendant's failure to "identif[y] any specific concerns or targets or reasons for its sweeping and intrusive discovery requests." *Id*.

---

[5] Beyond just personnel files, the defendant's subpoenas in *Perry* also sought security and loss prevention files, reference checks, employee handbooks, policy and procedure manuals, any complaints, charges or claims for benefits, and "any other documents that refer to Plaintiff." *Id*.

[6] EEOC also relies on dicta from *McKennon v. Nashville Banner Co.*, 513 U.S. 352, 363 (1995), to emphasize courts' concerns around employers routinely engaging in extensive discovery into an employee's background or job performance. Again, as with *Perry*, the *McKennon* court's comments on the potential abuse of an after-acquired evidence defense has no relationship to the current dispute where the subpoenas are focused on the qualified individual with a disability issue.

As discussed, *supra*, UPS's subpoenas are not conducting a fishing expedition in the hope of finding after-acquired evidence but, instead, relate to an issue that EEOC has directly placed into contention. For instance:

- Claimant Timothy LaPorte ("LaPorte") — LaPorte has held six (6) different driving jobs for five (5) different employers since he was allegedly denied employment with UPS in September 2019. In some cases, LaPorte's employment lasted just a few months (*e.g.*, Callahan Trucking: August 2020–January 2021; Integrity Cabinet Company: August 2023–October 2023). *See* (Ex. B, Nos. 7, 11 and 16).

- Claimant Wayne Turner ("Turner") — Turner has held at least five (5) different driver jobs for four (4) different employers since he allegedly received his CDL in early 2021. Turner also exhibited numerous short stints of employment with multiple employers (*e.g.*, JB Hunt: February 2022–August/October 2022 and again for approximately 6-8 months between late 2022 and June 2023; Amazon contractor: July 2023–November 2023). *Id.*

- Claimant Jose Ramirez ("Ramirez") — Ramirez has held at least four (4) different driver jobs since he alleges he was deterred from applying at UPS in 2021, with his longest term of employment lasting for approximately sixteen (16) months with "SNL" as a truck driver. *Id.*

In each of the examples, the claimant has prior employment driving a commercial vehicle that EEOC intends to rely upon to prove that the individual could perform the essential job functions for the UPS position sought. EEOC has furthermore cited to its answers to Interrogatories 11 and 16 regarding each claimant's experience driving DOT-regulated vehicles as proof that each

such claimant was a qualified individual with a disability. (Ex. B, Nos. 7, 11 and 16). As such, *Perry* is inapposite to the present subpoenas.

Nor are any of the other cases cited by EEOC relevant to the current dispute as UPS has not reflexively slapped subpoenas on all other employers with no explanation or justification beyond a fishing expedition. *See e.g. Collins v. Midwest Med. Recs. Ass'n, Inc.*, 2008 WL 7898471, at *2 (E.D. Wis. Feb. 7, 2008) (Defendant had no articulable basis for subpoenas and simply wanted to see what was out there); *Woods v. Fresenius Med. Care Grp. of N. Am.*, 2008 WL 151836, at *1 (S.D. Ind. Jan. 16, 2008) (relied upon by EEOC, yet acknowledges that requests for personnel records are appropriate where "a specific reason why the information is relevant to the particular claims and defense in the case" is at hand.). The fact that UPS has negotiated the subpoenas at issue in the present dispute separately from subpoenas involving prior employers that did not involve commercial driving and current employers makes clear that these subpoenas are targeted, focused and necessary for UPS's defense of the claims pursued by EEOC.

    2.    <u>EEOC Cannot Explain Why Job Performance Records Transform a Permissible Subpoena into One that is Prejudicial.</u>

In many of the cases cited by EEOC, there is a general concern with issuing subpoenas to current employers who might not otherwise know about the pending litigation. Consistent with this, UPS and EEOC are still trying to work through this issue with UPS allowing EEOC to attempt to gather the records sought itself and to also utilize the claimant's deposition before resort to discovery motion practice. Consequently, the cases cited by EEOC regarding concern that a current employer will learn about the pending litigation have no bearing on the present subpoenas to *prior* employers for whom the claimant drove commercially. *See e.g. U.S. Equal*

*Emp. Opportunity Commision v. AutoZone, Inc.*, 2016 WL 7231576, at *3 (N.D. Ill. Dec. 14, 2016).

Nor are such concerns present here because EEOC's requested relief is to modify the proposed subpoenas to eliminate the request for records related to job performance but to permit the subpoenas to seek records related to wages and benefits, driving records, performance assessments related to driving and performance documents only if they relate to a cause termination. (Ex. A). EEOC never explains, however, why the claimants will suffer prejudice merely because the otherwise agreed upon subpoenas also seek records related to job performance. Indeed, EEOC does not even address this point, choosing instead to rely upon cases expressing a general objection to subpoenas to current employers and fishing expedition subpoenas for the purpose of after-acquired evidence. As neither concern is present here, EEOC has failed to offer anything to support its burden to prove sufficient prejudice to obtain the extreme relief of the Court quashing or modifying the subpoenas at issue. *See Jackson v. Parker*, 2008 U.S. Dist. LEXIS 90659, *4-5 (denying Plaintiffs motion to quash subpoenas to former employers, stating "[w]hile there is a legitimate privacy interest in one's personnel files, that interest is not absolute, and does not inevitably trump other legitimate, competing interests in the case").

D.  **EEOC's Proposed Modifications Lack Clarity and Create Confusion**

EEOC's proposed limitations further emphasize why UPS needs the entire breadth of records requested in the subpoenas. Allowing UPS to seek "reports on driving records" and "assessments of [Claimant's] driving," but not records related to "job performance," *when the Claimant's primary job was driving a commercial vehicle*, puts the subpoena recipient in the precariously befuddling position of having to decipher whether a record falls into the category of

a "driving assessment" (and therefore must be produced) or an "evaluation of the individual's job performance as a driver" (and therefore should be withheld). Similarly, EEOC's proposal would allow for performance records only if they relate to a "cause termination," which is a term that is somewhat antiquated and not easily understood in most non-union work environments. It also draws an arbitrary and capricious line between disciplinary and performance write-ups related to job performance in the driving job and records that solely relate to cause terminations and formal performance reviews *on driving* (if that employer even conducts such reviews). Both categories of documents are needed for this case.

## CONCLUSION

For the foregoing reasons stated herein, EEOC has failed to meet its burden for a protective order and/or to quash the subpoenas, and the Court should deny the motion.

Respectfully submitted,

UNITED PARCEL SERVICE, INC.

By: /s/ *Gary R. Clark*
      One of Its Attorneys

Gary R. Clark, ARDC #06271092
Kristin C. Foster, ARDC # 6316814
Quarles & Brady LLP
300 North LaSalle Street, Suite 4000
Chicago, IL  60654
(312) 715-5000
(312) 715-5155 (fax)
gary.clark@quarles.com
kristin.foster@quarles.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the foregoing **Response in Opposition to EEOC's Motion for a Protective Order and to Modify Subpoenas Directed at Former Employers** was filed electronically on March 31, 2025 using the Court's CM/ECF system. Notice of this filing will be sent to parties of record.

*Counsel for Plaintiff*
Laurie Elkin
U.S. Equal Employment
 Opportunity Commission
Chicago District Office
230 S. Dearborn Street, Ste. 2920
Chicago, IL  60304
Lauri.elkin@eeoc.gov

*Counsel for Plaintiff-Intervenor*
Paul W. Mollica
Jin-Ho Chung
Equip for Equality
20 N. Michigan Avenue, Suite 400
Chicago, IL 60602
paulm@equipforequality.org
JinHo@equipforequality.org

    /s/*Gary R. Clark*
    Gary R. Clark

QB\95546646.1